IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CENTURY SURETY COMPANY,

      Plaintiff,

v.

LION REAL ESTATE GROUP, LLC;
HILLARY B. CRANFORD, as the
Administrator of the Estate of MARIA
BOSCO; and ISABELLA CASTRO,
individually and as a surviving child
of MARIA BOSCO;

      Defendants.

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Century Surety Company (or "Century") shows this Honorable Court the following:

## Nature of Action

1.     This case is an action for declaratory judgment under Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201, to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Century and the Defendants, i.e., whether Century owes any insurance coverage obligations to the Defendants in connection with the underlying claims and lawsuit asserted by Hillary B. Cranford and Isabella Castro against Lion Real Estate

Group, LLC, related to a February 5, 2023 fire at the Domain Apartment complex in Norcross, Georgia.

## **Parties, Jurisdiction, and Venue**

2.      Century is an Ohio corporation with its principal place of business in Southfield, Michigan.

3.      Defendant Lion Real Estate Group, LLC, is a limited liability company, organized under the laws of Delaware.

4.      No member of Defendant Lion Real Estate Group, LLC, is a citizen of or domiciled in Ohio or Michigan.

5.      The members of Defendant Lion Real Estate Group, LLC, are Jeffrey Weller and Mory Barak.

6.      Jeffrey Weller is domiciled in California, is a citizen of California, and intends to remain a citizen of California indefinitely.

7.      Mory Barak is domiciled in California, is a citizen of California, and intends to remain a citizen of California indefinitely.

8.      Defendant Lion Real Estate Group, LLC, is subject to personal jurisdiction and venue in this Court.

9.      Defendant Hillary B. Cranford is domiciled in Georgia, is a citizen of Georgia, and intends to remain a citizen of Georgia indefinitely.

10.   Defendant Hillary B. Cranford is the administrator of the Estate of Maria Bosco.

11.   Maria Bosco was a citizen of, resided in, and was domiciled in Georgia, immediately prior to her death.

12.   Defendant Hillary B. Cranford, as the Administrator of the Estate of Maria Bosco, is subject to personal jurisdiction and venue in this Court.

13.   Upon information and belief, Defendant Isabella Castro is domiciled in Georgia, is a citizen of Georgia, and intends to remain a citizen of Georgia indefinitely.

14.   Defendant Isabella Castro is subject to personal jurisdiction and venue in this Court.

15.   The Court has jurisdiction over this action under 28 U.S.C. § 1332.

16.   Plaintiff is a citizen of a different state than the Defendants.

17.   The amount in controversy, exclusive of interest and costs, exceeds $75,000.

18.   This Court also has jurisdiction pursuant to 28 U.S.C. § 2201, in that Century is seeking a declaration from this Court regarding the parties' rights and obligations with respect to insurance policies issued by Century.

**Background Facts**

19.     On January 26, 2024, Hillary B. Cranford and Isabella Castro filed a complaint, in the lawsuit known as *Hillary B. Cranford, as the Administrator of the Estate of Maria Bosco; and Isabella Castro, individually and as the sole surviving child of Maria Bosco v. Lion Domain Property Owner, LLC; Domain Apartments; and John Doe Defendants "A" through C"*, in the State Court of Gwinnett County, Georgia, Civil Action File No. 24-C-00704-S6 ("Underlying Lawsuit.").

20.     A true and accurate copy of that complaint is attached hereto as <u>Exhibit A</u>.

21.     On March 4, 2024, Hillary B. Cranford and Isabella Castro filed their Amended Complaint in the Underlying Lawsuit, a true and accurate copy of which is attached hereto as <u>Exhibit B.</u>

22.     In that Amended Complaint, Cranford and Castro dropped Domain Apartments as a defendant and added Lion Real Estate Group, LLC, as a defendant to the Underlying Lawsuit.

23.     In their Amended Complaint in the Underlying Lawsuit, Cranford and Castro alleged that Maria Bosco and her child Isabella Castro resided at Domain Apartments, in Norcross, Georgia. *See* Amended Complaint, ¶¶ 1-2, 11.

24.     In their Amended Complaint in the Underlying Lawsuit, Cranford and Castro alleged that the Domain Apartment complex "is owned, occupied, operated,

managed, supervised, maintained, and/or secured by the Defendants." *See* Amended Complaint, ¶ 11.

25.     In their Amended Complaint in the Underlying Lawsuit, Cranford and Castro alleged that "the Defendants caused a potentially life-threatening fire hazard … to exist in the Apartment's dryer utility vent system, which prevented the proper transfer of air, moisture and lent to the exterior of the building, and further caused an ultra-hazardous accumulation of lent and/or combustible materials in the system similar to that of a pipe bomb." *See* Amended Complaint, ¶ 12.

26.     In their Amended Complaint in the Underlying Lawsuit, Cranford and Castro alleged that, "on February 5, 2023, a catastrophic, violent fire …. erupted from the venting system of the Plaintiffs' Apartment and spread rapidly, thereby creating a life-threatening situation for Maria Bosco and Isabella Castro." *See* Amended Complaint, ¶ 13.

27.     Cranford and Castro's Amended Complaint in the Underlying Lawsuit also included the following allegations:

(a)     "Defendants' Complex and Apartment was poorly maintained, in disrepair, was unsafe, and was otherwise not habitable." *See* Amended Complaint, ¶ 16.

(b)     "Defendants knew and/or should have known: (1) that the Hazard existed; (2) that their failure to exercise reasonable care would create

a serious and life threatening fire hazard at the Complex and Apartments; (3) that their failure to exercise reasonable care would allow the serious and life threatening fire hazard to persist and grow all the more dangerous over time; and (4) that their failure to exercise reasonable care would foreseeably lead to the tragic loss of life and/or catastrophic injuries of those frequenting the Complex and Apartment (including Maria Bosco and Isabella Castro) if they did not take appropriate action." *Id.* at ¶ 17.

(c)    "As a direct and approximate result of the Defendants' actions or inactions …, Maria Bosco suffered fright; shock; catastrophic and excruciatingly [*sic*] burn injuries; permanent scaring; a comprised respiratory system caused by severe smoke inhalation; extreme emotional and mental damage; costs and expenses; the loss of her home; and ultimately, the tragic loss of her life on March 27,2023." *Id.* at ¶ 18.

(d)    "As a direct and proximate result of the Defendants' actions or inactions …, Isabella Castro – a minor child at the time, suffered fright; shock; serious and painful burn injuries; a compromised respiratory system caused by severe smoke inhalation; extreme emotional and mental damage; costs and expenses; loss of her home; and the loss of her mother." *Id.* at ¶ 19.

(e)    On March 16, 2023, Cranford and Castro's attorney "sent a preservation letter to the Defendants by certified mail requesting that the

Apartment not be disturbed so critical evidence could be preserved and investigated." *Id.* at ¶ 20.

(f)    On April 21, 2023, Plaintiffs' attorney "sent another letter to Defendants, again requesting the subject Apartment not be disturbed." *Id.* at ¶ 21.

(g)    Defendants "negligently violated numerous Georgia statutes, codes, rules and regulations," including building, mechanical, and residential codes, resulting in injuries to Maria Bosco and Isabella Castro. *Id.* at ¶¶ 49-51, 55-57.

28.    In their Amended Complaint in the Underlying Lawsuit, Cranford and Castro asserted claims for premises liability, negligence, negligence per se; negligent hiring, training, supervision and retention; gross negligence/wantonness; claims for the wrongful death of Maria Bosco; claims of the estate of Maria Bosco; individual claims of Isabella Castro; a claim for punitive damages; and a claim for sanctions ("including the striking of the Defendants' answer, defenses, curative instruction, or any other relief that Plaintiffs may be entitled to under Georgia law") for Defendants' spoilation of evidence.

29.    Throughout February 2023, Defendant Lion Real Estate Group, LLC, was the property manager for Domain Apartments and the apartment building where the February 5, 2023 fire occurred.

30.     Lion Domain Property Owner, LLC, was the owner of Domain Apartments throughout February 2023.

31.     By February 5, 2023, Defendant Lion Real Estate Group, LLC, knew about the February 5, 2023 fire at Domain Apartments.

32.     By February 5, 2023, Defendant Lion Real Estate Group, LLC, knew that one or more persons had been injured as a result of the February 5, 2023 fire at Domain Apartments.

33.     On March 16, 2023, a letter from attorney J. Parker Miller of Beasley, Allen, Cross, Methvin, Portis & Miles, P.C., was sent to Domain Apartments and Lion Domain Property Owner, LLC, advising that his firm represented "Maria Bosco and Isabella Castro for personal injuries and all other claims allowed under all applicable Federal and state laws, stemming from a fire incident that occurred on or around February 5, 2023, at the Domain Apartment complex."

34.     A true and accurate copy of that March 16, 2023 letter is attached to this complaint as Exhibit C.

35.     In that March 16, 2023 letter, attorney J. Parker Miller demanded that evidence related to the fire be preserved and the disclosure of insurance companies that may be liable for his "client's injuries and death."

36.     The March 16, 2023 letter was received by Lion Real Estate Group, LLC, in March 2023.

37.     On April 21, 2023, another letter from attorney J. Parker Miller, was sent to Domain Apartments and Lion Domain Property Owner LLC, stating that his firm represented "Maria Bosco and Isabella Castro for personal injuries and all other claims allowed under all applicable Federal and state laws stemming from a fire incident that occurred on or around February 05, 2023, at the Domain Apartment complex" and requesting dates for an inspection of the subject apartment.

38.     A true and accurate copy of that April 21, 2023 letter is attached to this complaint as Exhibit D.

39.     Upon information and belief, Lion Real Estate Group, LLC, received the April 21, 2023 letter in April 2023.

40.     Upon information and belief, Lion Real Estate Group, LLC, is insured under policies issued by Ohio Security Insurance Company and Allied World Insurance Company, which were issued to Liberty Domain Property Owner, LLC, with policy periods covering the February 5, 2023 fire.

## Commercial Lines Policy

41.     Century issued a Commercial Lines Policy ("Policy"), with Policy Number CCP 1111251, to Lion Real Estate Group, LLC, as the Named Insured.

42.     A true, accurate, and certified copy of the Policy (with premium amounts redacted) is attached to this complaint as Exhibit E.

43.     The Policy has a policy period of January 8, 2023, to January 8, 2024.

44.    The Policy includes a Commercial General Liability Coverage Form, which provides in part:

---

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under Section **II** – Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** – Definitions.

**SECTION I – COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.  * * * *

---

45.    The Policy includes a "Maintenance and Habitability Exclusion" endorsement, which provides in part:

This insurance does not apply to, and we shall have no duty to defend or indemnify, any claim, demand, "suit", action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief alleging "bodily injury", "property damage", or "personal and advertising injury" arising out of or alleged to arise out of the insured's failure to maintain any premises, site or location in a tenantable, habitable, livable or usable condition and for which a claim is made or "suit" filed alleging actual or constructive wrongful eviction, violation of any rent stabilization laws or ordinances, or violation of any local, state, or federal code, law, ordinance, statute, rule or regulation, that relates to the tenantability, habitability, condition, maintenance or upkeep of any premises, site or location, whether this:

1. Arises out of or is alleged to arise out of claims or allegations that any part of the premises, site or location is/was untenantable, not habitable or improperly maintained;

2. Arises out of or is alleged to arise out of a chain of events which includes a claim that any part of the premises, site or location is/was untenantable, not habitable or improperly maintained, regardless of whether the tenantability maintenance and habitability claim is the initial precipitating event or a substantial cause of the alleged damage or injury; or

3. Arises out of or is alleged to arise out of a claim that any part of the premises, site or location at issue is/was untenantable, not habitable or improperly maintained as a concurrent cause of injury, regardless of whether the tenantability, maintenance and habitability claim is the proximate cause of damage or injury.

But, this exclusion does not apply to any claim or "suit" for "bodily injury" or "property damage" arising from the condition, maintenance, or upkeep of any premises, site or location that is not part of, or alleged in connection with, a claim or "suit" alleging actual or constructive wrongful eviction, violation of any rent stabilization laws or ordinances, or violation of local, state, or federal code, law, ordinance, statute, rule or regulation, that relates to tenantability, habitability, condition, maintenance or upkeep of any premises, site or location.

46.    The Policy includes the following exclusion (among others) under

Coverage A:

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting form the use of reasonable force to protect persons or property.

47.    Coverage C of the Policy provides in part:

**COVERAGE C- MEDICAL PAYMENTS**

**1. Insuring Agreement**

**a.** We will pay medical expenses as described below for "bodily injury" caused by an accident:

**(1)** On premises you own or rent;

**(2)** On ways next to premises you own or rent; or

**(3)** Because of your operations;

provided that:

**(a)** The accident takes place in the "coverage territory" and during the policy period;

**(b)** The expenses are incurred and reported to us within one year of the date of the accident; and

**(c)** The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

48.    The Policy also provides the following:

**SUPPLEMENTARY PAYMENTS- COVERAGES A AND B**

**1.** We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:

* * *

> **e.** All court costs taxed against the insured in the "suit". However, these payments do not include attorneys' fees or attorneys' expenses taxed against the insured.

49.   The Policy includes the following conditions, among others:

> **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS**
> * * *
> **2. Duties In The Event Of Occurrence, Offense, Claim or Suit**
>
> **a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> **(1)** How, when and where the "occurrence" or offense took place;
>
> **(2)** The names and addresses of any injured persons and witnesses; and
>
> **(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.
>
> **b.** If a claim is made or "suit" is brought against any insured, you must:
>
> **(1)** Immediately record the specifics of the claim or "suit" and the date received; and
>
> **(2)** Notify us as soon as practicable.
>
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
>
> **c.** You and any other involved insured must:
>
> **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";
>
> **(2)** Authorize us to obtain records and other information;
>
> **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and
>
> **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than first aid, without our consent.
>
> **3. Legal Action Against Us**
>
> No person or organization has a right under this Coverage Part:
>
> **a.** To join us as a party or otherwise bring us into a "suit" asking for damages from an insured, or
>
> **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.  **\*\*\*\***

50.    The Policy includes the "Conditional Coverage – Real Estate Property Managed" endorsement, which adds the following conditions to Section IV – Commercial General Liability Conditions:

> **Real Estate Property Managed**
>
> As a condition of coverage:
>
> **(1)** You obtain from the property owner, at the time the property management commences, a valid certificate (or certificates) of insurance evidencing "occurrence"-based Commercial General Liability Coverage for ongoing operations and "products-completed operations hazards" for the property management performed by you and you keep such certificate(s) of insurance on file; and
>
> **(2)** Upon renewal or replacement of the property owner's insurance policy, you receive from the property owner a new valid certificate (or certificates) of insurance evidencing "occurrence"-based Commercial General Liability Coverage for ongoing operations and "products-completed operations hazards" for the property management performed by you and you keep such certificate(s) on file; and
>
> **(3)** You provide such certificate(s) of insurance to us upon our request; and
>
> **(4)** The insurance shown on the certificate(s) of insurance was written with an insurance company rated A- or better by A.M. Best at the time of certificate issuance; and

**(5)** The Limits on the certificate(s) are equal to or greater than $1,000,000 Each Occurrence Limit, $2,000,000 General Aggregate Limit (Other than Products-Completed Operations), and $1,000,000 Products-Completed Operations Aggregate Limit; and

**(6)** You are an insured or an additional insured on the property owner's policy or policies; and

**(7)** The property owner's policy has not restricted coverage for assault and battery exposures by:

**(a)** Excluding any claims arising out of or alleged to arise out of assault and battery; or

**(b)** Providing a sublimit to the Each Occurrence Limit for claims arising out of or alleged to arise out of assault and battery.

For the purposes of this endorsement, property management means managing, maintaining, operating, controlling, or overseeing any real estate not owned by the insured.

51.    The Policy's Special Exclusions and Limitations Endorsement includes the following exclusion:

**A. In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Coverages A & B:**

This insurance does not apply to:

\* \* \*

**5. Punitive, Exemplary, Treble Damages or Multipliers of Attorneys' Fees**
Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

52.    The Policy's Special Exclusions and Limitations Endorsement includes the following provisions regarding other insurance:

**4. Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages **A** or **B** of this Coverage Part, our obligations are limited as follows:

**a.** This insurance is excess over any other insurance whether the other insurance is stated to be primary, pro rata, contributory, excess, contingent, umbrella, or on any other basis; unless the other insurance is issued to the named insured shown in the Declarations of this Coverage Part and is written explicitly to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

**b.** When this insurance is excess, we will have no duty under Coverage **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

**c.** When this insurance is excess over other insurance, we will pay only our share of the amount of loss, if any, that exceeds the sum of:

**(1)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

**(2)** The total of all deductible and self-insured amounts under all that other insurance.

## <u>Commercial Excess Liability Policy</u>

53.     Century issued a Commercial Excess Liability Policy ("Excess Policy"), to Named Insured Lion Real Estate Group, LLC, with policy number CCP 1114179 and a policy period of January 8, 2023, to January 8, 2024.

54.     A true and certified copy of the Excess Policy (with premium amounts redacted) is attached to this complaint as <u>Exhibit F</u>.

55.     The Commercial Excess Liability Coverage Form of the Excess Policy

provides in part:

> Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.
>
> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words "we", "us" and "our" refer to the company providing this insurance. The word "insured" means any person or organization qualifying as such under the "controlling underlying insurance".
>
> Other words and phrases that appear in quotation marks in this Coverage Part have special meaning. Refer to Section **IV** - Definitions. Other words and phrases that are not defined under this Coverage Part but defined in the "controlling underlying insurance" will have the meaning described in the policy of "controlling underlying insurance".
>
> The insurance provided under this Coverage Part will follow the same provisions, exclusions and limitations that are contained in the applicable "controlling underlying insurance", unless otherwise directed by this insurance. To the extent such provisions differ or conflict, the provisions of this Coverage Part will apply. However, the coverage provided under this Coverage Part will not be broader than that provided by the applicable "controlling underlying insurance". There may be more than one "controlling underlying insurance" listed in the Declarations and provisions in those policies conflict, and which are not superseded by the provisions of this Coverage Part. In such a case, the provisions, exclusions and limitations of the "controlling underlying insurance" applicable to the particular "event" for which a claim is made or suit is brought will apply.
>
> **SECTION I- COVERAGES**
>
> **1. Insuring Agreement**
>
>    **a.** We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies.
>
>    We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits

of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".

However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.

56.    The Excess Policy includes the following definitions:

**SECTION IV - DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

**1.** "Controlling underlying insurance" means any policy of insurance or self-insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

**2.** "Controlling underlying insurer" means any insurer who provides any policy of insurance listed in the Declarations under the Schedule of "controlling underlying insurance".

\* \* \*

4. "Injury or damage" means any injury or damage, covered in the applicable "controlling underlying insurance" arising from an "event".

\* \* \*

**6.** "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

**a.** Settlements, judgments, binding arbitration; or

**b.** Other binding alternate dispute resolution proceeding entered into with our consent.

"Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

57.    In the Amendment of Retained Limit Definition endorsement, the Excess Policy defines "retained limit" as "the each 'occurrence' limit and/or each accident limit as shown on the Controlling Underlying Insurance Schedule."

58.    The Excess Policy's Schedule of Controlling Underlying Insurance identifies the Century Policy and includes an "Each Occurrence Limit" of $1,000,000.

59.    The Special Exclusions and Limitations Endorsement of the Excess Policy includes the following definitions, among others:

> **3.** "Event" means an "occurrence", offense, accident, act, or other event, to which the applicable "controlling underlying insurance" applies.
>
> * * *
>
> **5.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All "injury or damage" arising out of an "occurrence" or series of related "occurrences" is deemed to take place at the time of the first such "damage or injury" even though the nature and extent of such "damage or injury" may change; and even though the damage may be continuous, progressive, cumulative, changing or evolving; and even though the "occurrence" causing such "injury or damage" may be continuous or repeated exposure to substantially the same general harmful conditions.

60.    The Excess Policy includes the following exclusion, by endorsement:

> This insurance does not apply to claims or demands for payment of punitive, exemplary or treble damages, fines or penalties including any multiplier of attorneys' fees awarded to the prevailing party whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable.

61.    The Excess Policy contains the following conditions, under the Special

Exclusions and Limitations Endorsement:

---

**3. Duties in the Event of an Event, Claim or Suit**

  **a.** You must see to it that we are notified immediately of an "event", regardless of the amount, which may result in a claim under this insurance.

    However, if you notify any "controlling underlying insurer" of an "event" involving "bodily injury", it is a precondition of coverage, under this policy that you notify us in writing within 14 days of notifying the "controlling underlying insurer".

    To the extent possible, notice should include:

    **(1)** How, when and where the "event" took place;

    **(2)** The names and addresses of any injured persons and witnesses; and

    **(3)** The nature and location of any injury or damage arising directly or indirectly out of the "event".

    Your failure to provide the written notice, identified above, within the 14 days will be deemed to have prejudiced the Company and voids all coverage of an "event", claim or suit.

  **b.** If a claim is made or suit is brought against any insured, you must:

    **(1)** Immediately record the specifics of the claim or suit and the date received; and

    **(2)** Notify us immediately, as per paragraph **3. a,** above.

  **c.** You and any other involved insured must:

    **(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

    **(2)** Authorize us to obtain records and other information;

    **(3)** Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

    **(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of "injury or damage" to which this insurance may also apply.

---

> **d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

62.   The Excess Policy also includes the following conditions, among others:

> **11. Legal Action Against Us**
>
> No person or organization has a right under this Coverage Part:
>
> **a.** To join us as a party or otherwise bring us into a suit asking for damages from an insured; or
>
> **b.** To sue us on this Coverage Part unless all of its terms have been fully complied with.

## <u>Communications with Century</u>

63.   Century first received notice of the February 5, 2023 fire at Domain Apartments on February 22, 2024.

64.   No person or entity notified Century of the February 5, 2023 fire or any related claims or lawsuits until February 22, 2024.

65.   Lion Real Estate Group, LLC, has sought coverage from Century for the Underlying Lawsuit.

66.   On February 22, 2024, Century received a copy of a February 22, 2024 letter from attorney J. Parker Miller (attorney for Hillary Cranford and Isabella Castro) to Gwen Havlik (attorney for Lion Domain Property Owner, LLC), in which he communicated an offer to settle the claims of Cranford and Castro against Lion

Real Estate Group, LLC, and others for the sum of $19 million, including $6 million under the Century policies.

67.    The current deadline for Century to respond to that settlement offer is April 19, 2024.

68.    In an April 8, 2024 reservation of rights letter to Lion Real Estate Group, LLC, Century referred to its investigation of the February 5, 2023 fire, related claims, and Underlying Lawsuit, discussed policy provisions that may affect coverage, and reserved its rights.

69.    A true and accurate copy of the April 8, 2023 reservation of rights letter is attached hereto as Exhibit G.

70.    That April 8, 2023 reservation of rights letter was received by Lion Real Estate Group, LLC, on April 8, 2023.

71.    In the April 8, 2023 reservation of rights letter, Century asked Lion Real Estate Group, LLC, to provide Century with copies of several documents, including but not limited to any and all certificates of insurance obtained from Lion Domain Property Owner, LLC, with the date each such certificate was obtained by it; any and all certificate of insurance provided to Lion Real Estate Group, LLC, by any other entity related to Domain Apartments, with the date each such certificate was obtained; a full copy of Lion Domain Property Owner, LLC's insurance policies that may cover the occurrence; and any other insurance policies in place at the time of

the February 5, 2023 fire, which may provide coverage to Lion Real Estate Group, LLC, for claims related to that fire.

72.    Lion Real Estate Group, LLC, failed to provide Century with the requested documents.

### Count I - Declaratory Judgment as to Lack of Coverage Under Policy

73.    Century is in a position of uncertainty or insecurity with respect to its rights, status, and other legal relations as to the Policy and its obligations (if any) with respect to the Defendants, the February 5, 2023 fire, and the Underlying Lawsuit.

74.    The Policy does not cover the February 5, 2023 fire, any related claims, or the Underlying Lawsuit and will not cover any damages awarded therein, due to the failure of Lion Real Estate Group, LLC, to comply with the Policy's terms and conditions.

75.    Century was not notified as soon as practicable of the February 5, 2023 fire, which at that time constituted an "occurrence" under the Policy or an offense which may have resulted in a claim.

76.    Lion Real Estate Group, LLC, breached the Policy's condition requiring it to see to it that Century was notified as soon as practicable of an "occurrence" or an offense which may result in a claim.

77.    Lion Real Estate Group, LLC, may have breached the Policy's condition requiring it to notify Century as soon as practicable of the claims against it related to the February 5, 2023 fire.

78.    Lion Real Estate Group, LLC, may have breached the Policy's condition requiring it to see to it that Century receive written notice of claims as soon as practicable.

79.    Lion Real Estate Group, LLC, breached the Policy's condition requiring it to immediately send Century copies of any demands, notices, summonses or legal papers received in connection with a claim or suit.

80.    Lion Real Estate Group, LLC, may not have satisfied the Policy's Real Estate Property Managed conditions, by failing to obtain the required certificates of insurance, by failing to provide the required certificates of insurance to Century, and/or in other ways.

81.    Lion Real Estate Group, LLC, breached the Policy condition requiring it to cooperate with Century, by failing to provide Century with the certificates of insurance and insurance policies requested in the April 8, 2024 reservation of rights letter.

82.    Lion Real Estate Group, LLC's failure to cooperate with Century has prejudiced Century, by preventing Century from identifying and evaluating any insurance policies potentially covering Lion Real Estate Group, LLC, for the

February 5, 2023 fire, related claims, and the Underlying Lawsuit, and ensuring that Lion Real Estate Group, LLC, is enforcing its rights under those policies.

83.    Lion Real Estate Group, LLC may have breached the Policy conditions in other ways.

84.    Century is entitled to a declaratory judgment that Lion Real Estate Group, LLC, is not covered under the Policy for the February 5, 2023 fire, any related claims, and the Underlying Lawsuit, because conditions precedent for coverage under the Policy were breached, including the duties to provide timely notice, and for the other reasons set forth herein.

85.    The Policy also does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein, because those claims and damages do not qualify for coverage under the Policy's Insuring Agreements and/or because exclusions in the Policy preclude coverage.

86.    The Policy's Maintenance and Habitability Exclusion applies and bars coverage for the Underlying Lawsuit.

87.    The Policy does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein under the expected or intended injury exclusion under Coverage A, to the extent that the claims and lawsuit seek damages that were expected or intended from the standpoint of the insured.

88.     The Policy does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein under Coverage B, because the claims and lawsuit do not seek damages because of "personal and advertising injury" and because the exclusions under Coverage B preclude any such coverage.

89.     The Policy does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein under the expected or intended injury exclusion under Coverage C, as no medical expenses associated with the fire were reported to Century within one year of February 5, 2023.

90.     The Policy does not cover any claims for litigation costs, attorneys' fees, or expenses.

91.     The Policy excludes any and all claims for punitive damages, including those in the Underlying Lawsuit.

92.     The Policy may be excess to insurance policies issued by other carriers that cover Lion Real Estate Group, LLC, such that Century has no coverage obligations with respect to the Underlying Lawsuit.

93.     Century relies upon and reserves its rights to rely upon other Policy provisions or legal principles discovered during this action that also may limit or exclude coverage.

## **Count II - Declaratory Judgment as to Lack of Coverage Under Excess Policy**

94.     Century is in a position of uncertainty or insecurity with respect to its rights, status, and other legal relations as to the Excess Policy and its obligations (if any) with respect to the Defendants, the February 5, 2023 fire, and the Underlying Lawsuit.

95.     The Excess Policy does cover the February 5, 2023 fire, any related claims, or the Underlying Lawsuit and will not cover any damages awarded therein, due to the failure of Lion Real Estate Group, LLC, to comply with the Excess Policy's terms and conditions.

96.     Century was not notified immediately of the February 5, 2023 fire.

97.     Lion Real Estate Group, LLC, breached the Policy's condition requiring it to see to it that Century was notified immediately of the February 5, 2023 fire.

98.     Lion Real Estate Group, LLC, may have breached the Excess Policy's condition requiring it to notify Century as soon as practicable of the claims against it related to the February 5, 2023 fire.

99.     Lion Real Estate Group, LLC, breached the Excess Policy's condition requiring it to immediately send Century copies of any demands, notices, summonses or legal papers received in connection with a claim or suit.

100.   Lion Real Estate Group, LLC, breached the Excess Policy condition

requiring it to cooperate with Century, by failing to provide Century with the certificates of insurance and insurance policies requested in the April 8, 2024 reservation of rights letter, which prejudiced Century.

101.    Lion Real Estate Group, LLC may have breached the Excess Policy conditions in other ways.

102.    Century is entitled to a declaratory judgment that Lion Real Estate Group, LLC, is not covered under the Excess Policy for the February 5, 2023 fire, any related claims, and the Underlying Lawsuit, because conditions precedent for coverage under the Excess Policy were breached, including the duties to provide timely notice, and for the other reasons set forth herein.

103.    The Excess Policy also does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein, because those claims and damages do not qualify for coverage under the Excess Policy's Insuring Agreements and/or because exclusions in the Policy preclude coverage.

104.    The Excess Policy excludes any and all claims for punitive damages, including those in the Underlying Lawsuit.

105.    The Excess Policy also does not cover the February 5, 2023 fire, any related claims, and the Underlying Lawsuit and will not cover any damages awarded therein, for the same reasons that the Policy does not apply set forth in Count I above,

including but not limited to the Policy's Maintenance and Habitability Exclusion barring coverage and any failure of Lion Real Estate Group, LLC, to satisfy the Policy's Real Estate Property Managed Condition.

106.   The Excess Policy is excess to insurance policies issued by other carriers that cover Lion Real Estate Group, LLC, such that Century has no coverage obligations under the Excess Policy with respect to the Underlying Lawsuit.

107.   Century relies upon and reserves its rights to rely upon other provisions in the Excess Policy or legal principles discovered during this action that also may limit or exclude coverage.

WHEREFORE, Plaintiff Century Surety Company prays:

(a)   That this Court declare that Century has no duty to defend or indemnify the Defendants for the February 5, 2023 fire, any related claims, and the Underlying Lawsuit, or any judgments or awards in that lawsuit, under the Policy;

(b)   That this Court declare that Century has no duty to defend or indemnify the Defendants for the February 5, 2023 fire, any related claims, and the Underlying Lawsuit, or any judgments or awards in that lawsuit, under the Excess Policy;

(c)   For such other relief as this Court deems just and proper.

Respectfully submitted,

**Bovis, Kyle, Burch & Medlin, LLC**

200 Ashford Center North
Suite 500
Atlanta, Georgia  30338-2680
(770) 391-9100
kjackson@boviskyle.com
rbryant@boviskyle.com

/s/ Kim M. Jackson
Ga. State Bar No. 387420

/s/ W. Randal Bryant
Ga. State Bar No. 092039

*Counsel for Plaintiff Century Surety Co.*